JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Craig Fields, brings this appeal challenging his convictions for aggravated burglary and burglary. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On December 6, 2006, the Cuyahoga County Grand Jury indicted appellant on two counts of aggravated burglary, one count of violating a protective order, and one count of resisting arrest. Prior to trial, the trial court dismissed the charges for violating a protective order and resisting arrest.
 {¶ 3} On May 14, 2007, a jury trial commenced. The state presented four witnesses, including appellant's estranged wife, Trina Fields; Paul Pritchard; Officer Mark Kryznowek; and Patrolman Christopher Grimm. The state presented direct testimony of the following.
 {¶ 4} Appellant and Trina had been married for 20 years, and they have two children, Justin and Nicole. The couple owned a house located on Hillsdale Road in Brecksville, Ohio. In April 2006, appellant and Trina separated, and appellant moved out of the family home, taking only a portion of his belongings. Between April and October, appellant had only been to the house on one occasion, which was to care for Justin after he had been injured. Appellant still retained a set of keys to the house.
 {¶ 5} Some time during the day on October 21, 2006, Trina and Pritchard took Nicole out to dinner to celebrate her 17th
birthday. They both testified that Nicole planned to go to a concert that evening with friends, and she was picked up later by a friend. *Page 4 
 {¶ 6} In the early morning hours of October 22, 2006, Trina and Pritchard were asleep in the master bedroom of the Brecksville house. At approximately 4:00 a.m., they heard a loud noise, and a person, later identified as appellant, burst into the bedroom from an exterior door. Both witnesses testified that the door was kicked in, and the molding from the door frame detached from the wall.
 {¶ 7} Both witnesses testified that appellant began calling Trina derogatory names and threatened Pritchard, telling him he was "a dead man walking." Appellant began asking about the whereabouts of his daughter, Nicole, and then began roaming through the house as if to look for her. Both witnesses also testified that there were several guns in the house that belonged to appellant. Trina followed appellant through the house telling him to leave; Pritchard called 9-1-1 from the house telephone and told the dispatcher that appellant was in the house and was possibly armed.
 {¶ 8} Trina testified that she was not afraid appellant would hurt her. Pritchard testified that he felt threatened by appellant's comments and because he was aware appellant had weapons in the house.
 {¶ 9} Officer Mark Kryznowek and Patrolman Christopher Grimm testified that they are members of the SWAT team for the Brecksville police force. They were dispatched to the Hillsdale Road house around 4:30 a.m. on October 22, 2006. Officer Kryznowek arrived first and had prior knowledge of the house. The officers went to the front door with their weapons drawn. Both officers testified that appellant resisted them, but that ultimately he *Page 5 
was arrested, handcuffed, and transported to the police station. Appellant's truck was inventoried, and the police found two large knives in the truck.
 {¶ 10} At the close of the state's case, appellant made a Crim. R. 29 motion for acquittal. The trial court granted acquittal in part as to Count two, reducing the charge from aggravated burglary to burglary as to Trina. The defense presented two witnesses: appellant's daughter, Nicole, and Joseph Joynson, who testified to the following.
 {¶ 11} Nicole testified that she originally told appellant that she was going to a concert to celebrate her birthday. She spoke with him during the evening of October 21st and told him she did not go the concert, but instead was with a group of people who appellant knew were in their early to mid-twenties. She had been drinking and felt that appellant could probably tell she was drunk from their conversation. She testified that her phone call with appellant ended abruptly when the call was inadvertently disconnected.
 {¶ 12} Joseph Joynson testified that he and appellant have been friends for a long time and that they saw each other every day. He stated that appellant had returned to the Hillsdale Road house at least four times since he and his wife separated. On October 21, 2006, appellant was visiting with Joynson at his house and borrowed his cell phone to call Nicole before midnight. Appellant was visibly upset after the call and tried to contact Nicole several more times as well as to contact Trina, but all of these attempts were unsuccessful. Appellant indicated that he was going to look for his daughter, and he left Joynson's house around 2:00 or 2:30 a.m. *Page 6 
 {¶ 13} At the close of the evidence, the trial court instructed the jury on the elements of aggravated burglary as to Pritchard and burglary as to Trina Fields. On May 17, 2007, the jury returned a verdict of guilty on Count one, aggravated burglary in violation of R.C. 2911.11(A)(1), and guilty on Count two, burglary in violation of R.C. 2911.12(A)(1). On June 19, 2007, the trial court sentenced appellant to four years community control sanctions and 90 days of electronic home monitoring to follow the 120 days incarceration in county jail that he had already served while awaiting trial.
 Review and Analysis {¶ 14} On July 17, 2007, appellant filed his notice of appeal in which he challenges the sufficiency of the evidence, the jury instructions, and the admissibility of evidence concerning alleged improper acts.
 Sufficiency/Manifest Weight of the Evidence {¶ 15} "I. Craig Fields has been deprived of his liberty without due process of law by his convictions for aggravated burglary and burglary as said convictions were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt."
 {¶ 16} In his first assignment of error, appellant argues that there is insufficient evidence that he committed aggravated burglary and burglary. He specifically argues that the state failed to present evidence that he trespassed when he entered the Hillsdale Road house or that he acted with the intent to commit a criminal offense. Appellant claims he cannot be convicted of burglary because the Hillsdale Road house belonged to both him and Trina Fields. *Page 7 
 {¶ 17} In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 18} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph two of the syllabus.
 {¶ 19} More recently, in State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 20} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), *Page 8 162 Ohio St. 486, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v.Florida (1982), 457 U.S. 31, 45, 102 [*387] S.Ct. 2211, 2220,72 L.Ed. 2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed. 2d 560." Id. at 386-387.
 {¶ 21} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case.Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 22} Appellant first argues that since he is the owner of the marital home on Hillsdale Road, he could not have been trespassing on the morning of October 22nd. We disagree.
 {¶ 23} R.C. 2911.11 defines aggravated burglary: "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 {¶ 24} R.C. 2911.12 defines burglary: "(A) No person, by force, stealth, or deception, shall do any of the following: (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an *Page 9 
accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense. * * *"
 {¶ 25} The trial court instructed the jury that trespass, as used in both code sections, means "to knowingly enter or remain in a structure or dwelling or building of another without authority, consent, or privilege to do so."
 {¶ 26} In State v. Lilly, 87 Ohio St.3d 97, 1999-Ohio-251,717 N.E.2d 322, the court held that "[a] spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling." We are not persuaded by appellant's attempt to distinguish the court's holding from the scenario before us.
 {¶ 27} While we understand that appellant and Trina Fields jointly owned the Hillsdale Road house, we believe the state has presented sufficient evidence that Trina exercised exclusive custody and control of the property after the couple separated. Trina and Nicole both testified that appellant had only been in the house for a period of time not exceeding one week for the express purpose of caring for Justin, the couple's son. There was conflicting testimony as to whether appellant had ever returned to the house to make repairs, and both Trina and Nicole, the only two witnesses who lived in the house, testified that appellant had not returned to the house except for the one week as it related to Justin.
 {¶ 28} There was testimony that appellant may have retained a set of keys to the house, but appellant did not use keys to enter the house. The fact that appellant entered the house by kicking in the exterior bedroom door in the middle of the night suggests a lack of *Page 10 
consent. Trina testified that appellant did not have her permission to be in the house. We do not believe that the existence of some of appellant's belongings in the house establishes that he exercised custody and/or control over the premises. The state succeeded in producing sufficient evidence that appellant trespassed.
 {¶ 29} Appellant then argues that the state failed to present evidence that he entered the house with the intent to commit the criminal offense of menacing.[1] We disagree.
 {¶ 30} Although there was testimony from Joynson that appellant went looking for his daughter, there was also testimony to contradict that evidence. Trina testified that appellant knew Nicole was not in the house; appellant never called her looking for Nicole; and appellant had keys to the house, which would obviate the need to forcibly kick in the exterior bedroom door. Nicole testified that her father knew she was not at home based on their earlier phone conversation. The state presented evidence that appellant knew his estranged wife was dating another man, and there was also testimony that Pritchard's car was in the driveway. This testimony and the photos that were admitted into evidence indicate that appellant forcibly entered the house with the intent to commit menacing.[2] *Page 11 
 {¶ 31} Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence from which reasonable minds could differ as to what appellant intended when he entered the Hillsdale house in the middle of the night. We find the state presented sufficient evidence to support convictions for both aggravated burglary and burglary.
 Jury Instructions {¶ 32} "II. Craig Fields was deprived of his constitutional right to a fair trial before a jury of his peers by the trial court's improper jury instruction."
 {¶ 33} Appellant argues in his second assignment of error that, because the jury was given multiple theories under which he could be convicted, it was not clear from their verdicts whether there was unanimity. Appellant relies on State v. Johnson (1989),46 Ohio St.3d 96, for the proposition that if a single count can be divided into two or more distinct conceptual groupings, a jury shall be instructed that it must unanimously conclude that a defendant committed acts falling within a specific grouping.
 {¶ 34} The state asserts that appellant failed to object to the jury instructions at trial; therefore, he has waived all but plain error.State v. Williford (1990), 49 Ohio St. 3d 247, 551 N.E.2d 1279 ("failure to object before the jury retires in accordance with the second paragraph of Crim. R. 30(A), absent plain error, constitutes a waiver"). To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should *Page 12 
have been apparent to the trial court without objection. See State v.Tichon (1995), 102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell, 75 Ohio St.3d 163, 166,1996-Ohio-100, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips,74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.
 {¶ 35} Appellant did not object to the jury instructions before the jury deliberated, nor has he established that the outcome of the trial would have been different had the trial court instructed the jury in the manner he now proposes. In fact, defense counsel went so far as to affirmatively state to the trial court that he was satisfied with the instructions. Nonetheless, the general unanimity instruction given by the trial court was proper in this case.
 {¶ 36} In Ohio, the prevailing rule is that a general unanimity instruction, such as the one given in this case, "will ensure that the jury is unanimous on the factual basis for a conviction even where the indictment alleges numerous factual bases for liability." State v.Gibbs, Cuyahoga App. No. 86126, 2006-Ohio-175; State v. Mercer, Cuyahoga App. No. 81923, 2003-Ohio-3530. It is presumed that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Id.
 {¶ 37} The jury signed individual verdict forms finding appellant guilty of both charges. We find that the trial court's general unanimity jury instruction was proper. *Page 13 
 Other Acts Evidence {¶ 38} "III. Appellant was deprived of his constitutional right to a fair trial before an unbiased factfinder by the introduction of improper other acts evidence in the state's case in chief."
 {¶ 39} In his third assignment of error, appellant argues that he did not receive a fair trial because the trial court allowed the state to admit improper evidence of other acts, in contravention of Evid. R. 404(B). He points specifically to Trina Fields' testimony regarding a restraining order and Officer Kryznowek's testimony that he drew his weapon because he had "prior knowledge" of the house.
 {¶ 40} Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See, also, State v. Gumm, 73 Ohio St.3d 413, 1995-Ohio-24,653 N.E.2d 253.
 {¶ 41} Before the state began its case, the trial court granted appellant's motion in limine to exclude any reference to the alleged restraining order. Appellant's counsel elicited the proscribed reference to a restraining order during Trina Fields' testimony. On cross-examination of Trina, appellant's counsel asked her three times whether she had told appellant she was dating Pritchard. After the third time, Trina answered, "There was a restraining order. I didn't talk to him." *Page 14 
 {¶ 42} We are not persuaded by appellant's contention that the brief testimony about the restraining order constitutes other acts evidence as contemplated by Evid. R. 404(B). Furthermore, appellant's own counsel elicited the information, and no mention was made of the restraining order for the remainder of the trial. Appellant's objection was sustained, and the trial court gave a curative instruction along with the jury instructions. Curative instructions have been recognized as an effective means of remedying errors or irregularities that occur during trial. State v. Zuern (1987), 32 Ohio St.3d 56, 61, 512 N.E.2d 585. Further, juries are presumed to follow any curative instructions given by a trial court. State v. Henderson (1988), 39 Ohio St.3d 24, 33,528 N.E.2d 1237.
 {¶ 43} We do not find that the passing mention of the alleged restraining order violated Evid. R. 404(B) or prejudiced appellant in any way.
 {¶ 44} Next, appellant argues that he was prejudiced by the following testimony by Officer Kryznowek under direct examination:
 {¶ 45} "Q. What happened when you responded?
 {¶ 46} "A. I was the first unit on the scene, went past the residence and circled back in case of any problems I could use the car for cover * * *.
 {¶ 47} "Q. Did you get out of your car then?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. Had anyone else arrived at that point?
 {¶ 50} "A. At that time, I immediately exited the vehicle, I grabbed my MP-5, a submachine gun I carry on the road. *Page 15 
 {¶ 51} "* * *
 {¶ 52} "Q. At that point, why did you choose to use that weapon?
 {¶ 53} "A. From prior knowledge of the residence."
 {¶ 54} Appellant objected, and the trial court sustained it. Appellant now argues that the officer's testimony prejudiced him and implied appellant was involved in prior criminal acts. We disagree.
 {¶ 55} There is no reasonable connection between the officer's familiarity with appellant's house and other acts by appellant to show conformity for purposes of conviction. There was no evidence admitted at trial of other acts by appellant. To the contrary, several other reasons were given as to why the police may know appellant's house, not the least of which were that the Fields' children had prior dealings with law enforcement.
 {¶ 56} We do not believe appellant was denied a fair trial under the theory that other acts were admitted at trial in violation of Evid. R. 404(B). Appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 16 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J., and MARY JANE BOYLE, J., CONCUR
[1] R.C. 2903.22 states: "(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."
[2] In State v. Gardner, 118 Ohio St. 3d 420, 2008-Ohio-2787,889 N.E.2d 995, the Ohio Supreme Court stated that "[a]lthough the jury was not given a specific crime to consider in determining [defendant's] intent in entering [the victim's] home, a reasonable jury could conclude that * * * his threat to kill [the victim] was a `criminal offense' of some form, even without the benefit of the elements of * * * menacing, R.C. 2903.22. Indeed, Ohio courts have recognized that one who forcibly enters a dwelling in the manner depicted in this case may reasonably be assumed to do so with the intent to commit a criminal act within. See, e.g., State v. Robinson, Cuyahoga App. No. 82261, 2003-Ohio-4666 * * *." *Page 1